UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT


MARYELIZABETH BASSETT-JORDAN    :
                                :
                                :
v.                              :  CIV NO. 3:08CV136(JCH)
                                :
MICHAEL J. ASTRUE,              :
COMMISSIONER OF SOCIAL SECURITY :
ADMINISTRATION                  :


**RECOMMENDED RULING ON PENDING MOTIONS**

Plaintiff, Maryelizabeth Bassett-Jordan, filed this action

seeking review, pursuant to 42 U.S.C. § 405(g), of the decision

of the Commissioner denying her claim for disabled adult child

insurance benefits ("DAB") and Supplemental Security Income

("SSI") benefits under the Social Security Act.  Plaintiff seeks

an order reversing the decision of the Commissioner or, in the

alternative, a remand for further proceedings.  Defendant seeks

an order affirming the decision of the Commissioner.  Upon

consideration of the motions, the court recommends that

plaintiff's motion be denied and defendant's motion be granted.


**I.    ADMINISTRATIVE BACKGROUND**

On March 9, 2005, Jordan filed an application for both child's insurance benefits and supplemental security income. Tr. 16; 37-39. Claimant alleges she became disabled on June 13, 1989. Id. In the disability report completed at the time of her applications, plaintiff identified the disability under which she suffers as attention deficit hyperactivity disorder (ADHD) and oppositional/defiant disorder (ODD). Tr. 40-47. Plaintiff's applications were denied initially on July 22, 2005, and upon reconsideration on September 3, 2005. Id.

On April 28, 2006, plaintiff requested a hearing by an Administrative Law Judge ("ALJ"). Tr. 37-39. A hearing was held on February 7, 2007, before ALJ Robert A. DiBiccaro. Tr. 26, 248-296. Plaintiff appeared with counsel at the hearing. Id. On August 31, 2007, the ALJ determined that plaintiff was not disabled and denied benefits. Tr. 16-23.

On October 25, 2007, plaintiff requested review of the denial by the Appeals Council. Tr. 9-10. On December 28, 2007, the Appeals Council upheld the denial of benefits. Tr. 4-6 Plaintiff commenced this action on January 25, 2008. [Doc. #1].

## II.  FACTUAL BACKGROUND

Plaintiff was born on June 13, 1987. Tr. 37. She was first

diagnosed with ADHD and ODD at age 2. Tr. 64, 270. Her father

died on September 22, 1997. Tr. 92, 269.  She resides with her

mother and brother. Tr. 40, 188, 244, 266.  She has a history of

asthma.  Tr. 140.

Jordan was placed in special education classes beginning in

kindergarten. Tr. 64, 271. She did not "deal well at all in the

regular school system" and was expelled from public school. Tr.

188, 251.  Plaintiff's mother testified that her daughter did not

do well academically in school and had "good days and bad days"

behaviorally.  Tr. 272-75. In tenth grade, plaintiff attended The

Venture School Program. Tr. 255. Near the end of her eleventh

grade year, plaintiff transferred to Cedarhurst. Tr. 255.

Plaintiff graduated from high school in 2005, receiving diplomas

from her public high school and Cedarhurst, a therapeutic school.

Tr. 253-54.

Since graduating from high school, Ms. Jordan has held three

jobs at Popeye's Chicken, Kohl's and Dunkin' Donuts. Tr. 251,

256.[1]

Ms. Jordan received therapy for her ADHD and ODD and anger

---

[1]Ms. Jordan testified that she worked at Kohl's as a
seasonal employee for two years at the register bagging
merchandise. Her seasonal employment lasted a couple of weeks
each time. Tr. 259-60.  The ALJ did not consider this employment.

management counseling. Tr. 268. She has been on a variety of
medication, including Ritalin, Depakote,[2] Stratera, and Topamax.
Tr. 263. At the time of the hearing, she had not been taking
medication or attending therapy for approximately two years.  Tr.
294.

Plaintiff testified that she spends her days seeking
employment, watching t.v. and going on the internet. Tr. 265.

**Marc Hillbrand, Ph.D.**

On June 20, 2005, Marc Hillbrand, Ph.D., conducted a
psychological consultive evaluation.  Tr. 188-91.  Dr. Hillbrand
described plaintiff as "alert and oriented in all spheres." Tr.
189. He noted that Ms. Jordan "views the world as a challenging
and hostile place."  Tr. 190. He also interviewd her mother. Tr.
188.  He assessed treatment records from Rushford MidState
Behavioral Health Systems from 2002-03 and Meriden Public School
District school records from 2002.  Tr. 188. He noted that both
Jordan and her mother reported that Jordan gets angry easily.
Tr. 188.

Dr. Hillbrand noted that plaintiff "provided good answers to

---

[2]Depakote is a mood stabilizer. Tr. 188.

formal judgment questions, although her history is replete with instances of poor judgment. She is easily distractible." Tr. 189. "Her memory is on a par with other intellectual functions." Tr. 189. She demonstrated hyperactivity and her affect was "labile and easily irritable." Tr. 189. Her speech was loud and with slight pressure. Tr. 189. On the WAIS III, plaintiff had a Verbal IQ of 75, Performance IQ of 70 and a Full Scale IQ of 70, falling in the borderline intellectual functioning without significant differences among them. Tr. 189. Her Cognistat Calculation score fell in the mildly impaired range. Tr. 190. On the Wide Range Achievement Test-Revision 3, her "pattern of performance on the various achievement intellectual and neuropsychological measures is suggestive of lifelong intellectual endowment in the borderline intellectual functioning range with a specific weakness in the ability to manipulate numeric symbols." Tr. 190.

On the DSM-IV, Dr. Hillbrand indicated under AXIS I: ADHD, conduct disorder, mathematics disorder, marijuana abuse, depressive disorder NOS. Under AXIS II: borderline intellectual functioning, personality disorder, NOS, mixed, with antisocial and borderline traits. Under AXIS III: Asthma. Under AXIS IV: Occupational problems, educational problems, economic problems;

and under AXIS V: Global Assessment Functioning (GAF) 60, within the moderate range. Tr. 190-91.  Dr. Hillbrand stated that "she appears to have the ability to perform simple routine repetitive tasks and follow instructions."  Tr. 191.

Plaintiff testified that while she attended high school, she received therapy from Jessica Wolf at Rushford, formerly Mid-State Medical Center Child and Adolescent Program. Tr. 261, 265.

Plaintiff was treated for injuries she sustained in a fight in August 2003 and October 2006. Tr. 266.

At the hearing, plaintiff testified that she was no longer seeing a therapist and she was off all medications for ODD and ADHD. Tr. 262.  Plaintiff's mother testified that getting plaintiff to treat and be compliant with medications has been a problem throughout her life.  Tr. 276.  "The medications seemed most of the time to make her worse."  Tr. 276.


**Bill Fuess, Ph.D.**

Bill Fuess, Ph.D testified as an impartial medical expert at plaintiff's administrative hearing on February 7, 2007. Tr. 280-93.  After reviewing plaintiff's records and listening to her testimony, Dr. Fuess summarized plaintiff's mental impairments at ODD, ADHD, depression, personality disorder, and marijuana abuse.

Tr. 281-83.  Dr. Fuess also recognized that plaintiff had attended special education classes, had significant difficulties with socialization, was easily distracted, demonstrated borderline intellectual function, and suffered from learning difficulty with mathematics and written expression. Tr. 282-83. Dr. Fuess opined that plaintiff suffered from none to mild limitations related to her activities of daily living,  Tr. 285-86; moderate limitation with social functioning, Tr, 286; moderate limitations with concentration, persistence and pace, Tr. 286-87; and no periods of extended deterioration or decompensation Tr. 288. Dr. Fuess further testified that plaintiff would have none to mild limitations related to concentration, persistence, and pace when engaging in simple tasks and carrying out simple instructions. Tr. 287.  The ALJ asked Dr. Fuess whether plaintiff could perform simple, routine repetitive tasks on a regular and continuing basis and Dr. Fuess opined that plaintiff could, "[a]nd I might also add, with minimal contact . . . with the public and with fellow workers. "[I]t shows from the testing, from the overall school learning experiences that she is able to follow, understand and complete tasks." Tr. 288.  Dr. Fuess testified that plaintiff's past recorded Global Assessment of Functioning ("GAF") scores below 60

did not fairly describe her overall level of impairment.[3] Tr.
289-90.

## SARAH Employment Service

Following the administrative hearing, additional records
were submitted from Sarah Employment Service. Tr. 223-28.
Plaintiff was hired at Popeye's Chicken on August 8, 2005. Tr.
226. Progress reports, prepared by her counselor at Sarah
Employment Services, regarding her employment at Popeye's stated
that plaintiff "learned quickly and was able to keep up with the
demands of the job. She prepared food and also cleaned tables
without any difficulties." "Mary continues to work very well. She
seemed to learn from her mistakes quickly," and she "does well at
her responsibilities. However, she refuses to expand her
availability to be scheduled more hours."[4] Tr. 223-27.  Plaintiff
was hired at Dunkin' Donuts on February 28, 2006, as an attendant

_____

[3]Dr. Fuess testified that a GAF score is a "snapshot" of a
person's current level of functioning.  Plaintiff had a GAF score
of 60 in June 2005, plaintiff's most recent testing. Tr. 291.
She had a GAF score of 39 at the age of 14 and a GAF score of 46
at 16 years old. Tr. 292.

[4]Ms. Jordan testified that she quit her job at Popeye's
Chicken after approximately a month "because the manager was-he
was mean to me, and the other manager was sexually harassing me,
and so I didn't want to work there no more. He would say rude
comments to me." Tr. 257-58.

making $7.40 per hour.[5] Tr. 228.


**Jay M. Curdin, Ph.D.**

The ALJ sent plaintiff for a second psychological
examination after the hearing because it had been two years since
her last examination and treatment. Tr. 294.  Jay M. Curdin,
Ph.D., conducted the psychological consultative evaluation on May
7, 2007. Tr. 238-40. He administered a variety of tests to
evaluate plaintiff's functional abilities.  These tests included
the Bender Visual-Motor Gestault Test, Cognistat, Rey's II Memory
Test, Rorshcach Inkblot Test, Wechsler Adult Intelligence Scalle
(WAIS-III), and the Wide Range Achievement Test (WRAT-III). Tr.
238. On the WAIS III, plaintiff had a Verbal IQ of 76,
Performance IQ of 78 and a Full Scale IQ of 75; placing her in
the borderline intelligence range.  Tr. 239-40.  Dr. Curdin
concluded that plaintiff "was a temperamental late adolescent who
needed little pretext for her anger.  She denied most emotional
problems but was upset with herself over not being able to absorb
new job routines. " Tr. 240. He noted that her performance during

---

[5]Plaintiff testified that she left her job at Dunkin' Donuts
because it was "too fast" for her and an employee screamed at
her." Tr. 258-59.

the testing "showed that ongoing problems with attention, and concentration interfered with her ability to show her full intelligence potential." Tr. 240. Although plaintiff had the intellectual ability to understand and retain instructions, she had difficulty with consistent task execution, and severe computational difficulty. Tr. 240. "Her overall results showed that she could understand and retain instructions but had problems with consistent attention and concentration that would affect learning and consistently handling job demands." Tr. 240.

Dr. Curdin also completed a medical source statement of ability to do work-related activities (mental). Tr. 241-43. He opined that plaintiff had no limitation in her abilities to understand, remember and carry out simple instructions and to make judgments on simple work related decisions. Tr. 241. He opined that plaintiff only suffered from mild limitations in her abilities to understand and remember complex instructions, interact appropriately with co-workers, and to respond appropriately to usual work situations and to changes in a routine work setting. Tr. 241-42. He further opined that plaintiff had moderate limitations in her ability to carry out complex instructions, to make judgments on complex work-related decisions, interact appropriately with the public, and with

supervisors. Tr. 241-42. He stated that poor attention, concentration and computational skills affected her impairment. Tr. 242.

### III. STANDARD OF REVIEW

The court's review of the Commissioner's final decision is limited to determining whether the ALJ applied the correct legal standard and whether there is "substantial evidence" in the record to support his determination. Acierno v. Barnhart, 475 F.3d 77, 80-81 (2d Cir.), cert. denied, 127 S. Ct. 2981 (2007); 42 U.S.C. § 405(g). Substantial evidence is evidence that a reasonable mind would accept as adequate to support a conclusion; it is more than a "mere scintilla." Richardson v. Perales, 402 U.S. 389, 401 (1971). The substantial evidence rule also applies to inferences and conclusions that are drawn from findings of fact. See Gonzalez v. Apfel, 23 F. Supp. 2d 179, 189 (D. Conn. 1998). In conducting this review, the court affords substantial deference to the Commissioner's decision. The court does not decide facts, reweigh the evidence or substitute its own judgment for that of the Commissioner even if the court might justifiably have reached a different decision if it were reviewing the case de novo. Dotson v. Shalala, 1 F.3d 571, 577 (7th Cir. 1993).

The court must scrutinize the entire record to determine the reasonableness of the ALJ's factual findings.  However, "[w]here there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have [his] disability determination made according to correct legal principles."  <u>Schaal v. Apfel</u>, 134 F.3d 496, 504 (2d Cir. 1998) (citation omitted).

**IV.  DISABILITY UNDER THE SOCIAL SECURITY ACT**

In order to establish an entitlement to disability benefits under the Social Security Act, a claimant must prove that she is "disabled" within the meaning of the Act.  A claimant may be considered disabled, and eligible for DAB or SSI benefits, only if she cannot engage in any substantial gainful activity because of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less that twelve months.  42 U.S.C. § 423(d)(1)(A); <u>Shaw v. Chater</u>, 221 F.3d 126, 131 (2d Cir. 2000).

The impairment must be supported by medically acceptable clinical and laboratory techniques.  42 U.S.C. § 423(d)(3).  A

disability will be found to exist only if the severity of the
impairment is based on objective medical facts, diagnoses or
medical opinions that can be inferred from these facts,
subjective complaints of pain or disability, educational
background, age and work experience.  Mongeur v. Heckler, 722
F.2d 1033, 1037 (2d Cir. 1983).

Determining whether a claimant is disabled requires a five-
step process.  First, the court must determine whether the
claimant is currently working.  If the claimant is currently
employed, the claim is disallowed.  20 C.F.R. § 404.1520(b),
416.920(b).  If the claimant is not working, as a second step,
the agency must make a finding as to the existence of a severe
mental or physical impairment; if none exists, the claim is
denied.  See 20 C.F.R. §§404.1520(c), 416.920(c).  The impairment
must be of such severity that the claimant is not only unable to
do her previous work but also, considering her age, education,
and work experience, cannot engage in any other kind of
substantial gainful employment which exists in the regulations
(the "Listings").  20 C.F.R. §§404.1520(d), 416.920(d); Bowen v.
Yuckert, 482 U.S. 137, 141 (1987).  At step three, the claimant's
impairment is compared with the impairments in the Listings.  If
the claimant's impairment meets or medically equals one of the

13

impairments in the Listings, the claimant is presumed to be

disabled. 20 C.F.R. §§ 404.1520(d), 416.920(d); <u>Shaal v. Apfel</u>,

134 F.3d at 501. If the claimant's impairment does not meet or

medically equal one of the listed impairments, as a fourth step,

he will have to show that he does not possess the residual

functional capacity to perform his past relevant work.[6] 20

C.F.R. §§404.1520(e)-(g), 404.1560(c), 416.920(e)-(g),

416.960(c). <u>See</u> <u>Barnhart v. Thomas</u>, 540 U.S. 20, 24-25 (2003).

The initial burden of establishing disability is on the

claimant. 42 U.S.C. §423(d)(5); <u>Green-Younger v. Barnhart</u>, 335

F.3d 99, 106 (2d Cir. 2003). If the claimant demonstrates that

she is incapable of performing her past work, the burden then

shifts at step five to the Commissioner to show that the claimant

has the residual functional capacity to perform other substantial

---

[6]"Residual functional capacity" refers to what a claimant
still can do in a work setting despite his physical and mental
limitations caused by his impairment, including related symptoms
such as pain. In assessing an individual's RFC, the ALJ
considers his symptoms, such as pain, signs and laboratory
findings together with the other evidence. 20 C.F.R. § 404.1545.
"Ordinarily, RFC is the individual's maximum remaining ability to
do sustained work activities in an ordinary work setting on a
regular and continuous basis, and the RFC assessment must include
a discussion of the individual's abilities on that basis. A
'regular and continuous basis' means 8 hours a day, for 5 days a
week, or an equivalent work schedule." SSR 96-8p; <u>see</u> <u>Melville</u>
<u>v. Apfel</u>, 198 F.3d 45, 52 (2d Cir. 1999).

gainful activity in the national economy.  20 C.F.R. §404.1520(f)(1); Butts v. Barnhart, 388 F.3d 377, 383 (2d Cir. 2004), amended on other grounds on reh'g, 416 F.3d 101 (2d Cir. 2005).  A claimant is entitled to receive disability benefits only if she cannot perform any alternate gainful employment.  20 C.F.R. §404.1520(f); Perez v. Chater, 77 F.3d 41, 46 (2d Cir. 1996).

## V.    DISCUSSION

Following the five step evaluation process, the ALJ determined that plaintiff has not engaged in substantial gainful activity since the onset of disability, June 13, 1989. Although plaintiff presented evidence that she worked part-time at Popeye's Chicken and Dunkin' Donuts, the ALJ concluded that this work activity did not constitute substantial gainful activity. Tr. 18.  At step two, the ALJ found plaintiff has the following severe impairments: attention deficit hyperactivity disorder (ADHD) and oppositional/defiant disorder (ODD). Tr. 18.  At step three, the ALJ determined that plaintiff has not had an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).  Rather, the ALJ found that

15

since plaintiff's alleged onset of disability, she retained the residual functional capacity (RFC) "to perform a wide range of heavy work; she could follow simple instructions and perform routine repetitive tasks, and she is limited to occasional contact with co-workers and the public. She must avoid concentrated exposure . . .  She has none to mild restriction of activities of daily living, moderate difficulty in maintaining social functioning, moderate difficulty in maintaining concentration, persistence or pace and no episodes of decompensation; for simple instructions or tasks, she has none to mild limitations in maintaining social functions and in concentration, persistence and pace." Tr. 19.  In assessing plaintiff's RFC, the ALJ found that her statements concerning the intensity, persistence and limiting effects of her symptoms was not entirely credible "to the extent of causing her to be unable to perform all work activity." Tr. 22 (emphasis added).  At step four, the ALJ found that plaintiff had no past relevant work. Tr. 22. The ALJ found that plaintiff is a younger individual, with a high school education in special education, able to communicate in English. Tr. 22. At step five, the ALJ found that transferability of job skills was not an issue because plaintiff does not have past relevant work.  Tr. 22.  The ALJ then

concluded that a finding of "not disabled" is appropriate under Medical-Vocational Guidelines (GRIDS) section 204.00.  Tr. 22-23. The ALJ found that plaintiff was not under a "disability, " as defined by the Social Security Act, at any time since her alleged onset of disability, June 13, 1989.  Tr. 23.

In support of his motion to reverse or remand, plaintiff argues that there is substantial evidence in the record to support a finding of disability and that the ALJ erred in not having a vocational expert appear and testify.  Defendant contends that Commissioner's decision is supported by substantial evidence and should be affirmed.

1. **Substantial Evidence to Support a Finding of Disability**

The plaintiff first argues that there is substantial evidence in the record to support a finding that Jordan is disabled.  Doc. #10-2 at 7.  To support this contention, plaintiff cites material from the record indicating that, between 2002 and 2006, Jordan received GAF (Global Assessment of Functioning) scores ranging from 39, at the lowest, to 60 at the highest.  Doc. #10-2 at 7.  Plaintiff argues that "[i]f we consider this history of 'snapshots,' in the period from nearly 3 years before plaintiff's consultative examination, and ending a year after the consultative examination, <u>one may conclude</u>, from

the ME's testimony, that plaintiff is unable to carry on regular work." Id. (emphasis added). Plaintiff further noted that she "clearly lacks attention, the ability to concentrate, and persistence of pace" and "suffers from a 'severe computational difficulty.'" Id.

Defendant counters that "the issue before this court is actually whether there is substantial evidence supporting the ALJ's finding that plaintiff is not disabled and not whether there is substantial evidence of disability." Doc. #13-2 at 8 (emphasis added). Indeed, "factual issues need not have been resolved by the [Commissioner] in accordance with what we conceive to be the preponderance of the evidence." Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982). Rather, the factual findings of the Commissioner are conclusive, if supported by substantial evidence. Id. (citing, 42 U.S.C. §§405(g), 1383(c)(3); Rivera v. Harris, 623 F.2d 212, 216 (2d Cir. 1980)). Review is "limited to inquiring into whether the [Commissioner's] conclusions are supported by substantial evidence in the record as a whole or are based on an erroneous legal standard." Cruz v. Sullivan, 912 F.2d 8, 11 (2d Cir. 1990). The Supreme Court defines "substantial evidence" as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept

as adequate to support a conclusion." <u>Richard v. Perales</u>, 402 U.S. 389, 401 (1971) (quoting <u>Consolidated Edison Co. of New York v. N.L.R.B.</u>, 305 U.S. 197, 229 (1938)).

Defendant argues that "substantial evidence" supporting the Commissioner's finding includes, but is not limited to: (1) the opinion evidence from two examining psychologists, Drs. Hillbrand and Curdin; (2) the testimony from the impartial medical examiner, Dr. Fuess; and (3) the employment progress reports from the SARAH Employment Service. Defendant argues, and the Court agrees that, "this evidence demonstrates that plaintiff is not disabled because she is capable of following simple instructions and performing routine repetitive tasks with none to mild limitations in maintaining social functions and concentration, persistence and pace." Tr. 191, 223-28, 285-88, 240-42.

"The Commissioner does not contest that Drs. Hillbrand and Curdin's exam findings and opinions reflect that plaintiff suffers from <u>some</u> deficiencies related to attention, concentration, persistence and pace; or that her limitations are going to reduce her ability to learn and consistently handle <u>some</u> jobs." Doc. #13-2 at 10 (emphasis in original). Rather, the Commissioner asserts that "plaintiff's documented deficiencies do not preclude performance of jobs involving simple, routine, and

repetitive tasks." Id. Plaintiff's argument asks this court to reinterpret the evidence to reach a difference conclusion. However, this argument is unavailing where, as here, there is substantial evidence to support the ALJ's decision. See Richardson, 402 U.S. at 401 (defining "substantial evidence" as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."); Consolo v. Federal Maritime Commission, 383 U.S. 607, 620 (1966) ("The reviewing court must take into account contradictory evidence in the record, but the possibility of drawing two inconsistent conclusions from the evidence does not preclude an administrative agency's finding from being supported by substantial evidence.") (internal quotation marks and citations omitted); American Textile Mfs. Inst., Inc. v. Donovan, 452 U.S. 490, 523 (1981) ("Since the Act places responsibility for determining substantial evidence questions in the courts of appeals, 29 U.S.C. § 655(f), we apply the familiar rule that [t]his Court will intervene only in what ought to be the rare instance when the substantial evidence standard appears to have been misapprehended or grossly misapplied by the court below.") (internal quotation marks and citations omitted); DeChirico v. Callahan, 134 F.3d 1177, 1182-83 (2d Cir. 1998) (agency's

decision affirmed where there was substantial evidence for both sides).

Finally, plaintiff argues that based on the four GAF scores between November 2002 and May 2006, "one may conclude, from the ME's testimony, that plaintiff is unable to carry on regular work."  Doc. #10-2 at 7; see Seymore v Apfel, 131 F.3d 152, No. 97-5068, 1997 WL 755386, at *2 (10th Cir. Dec. 8, 1997) (GAF of 45, standing alone, "does not evidence an impairment seriously interfering with claimants ability to work."). Nevertheless, Dr. Fuess opined, that plaintiff's lower GAF scores did not fairly describe plaintiff's "overall" functional capacity. Rather, Dr. Fuess explained a GAF score is a "snapshot," it's "subjective," Tr. 289, 291-92.  The AlJ asked Dr. Fuess whether plaintiff could perform simple, routine repetitive tasks on a regular and continuing basis and Dr. Fuess opined that plaintiff could, "[a]nd I might also add, with minimal contact . . . with the public and with fellow workers.  "[I]t shows from the testing, from the overall school learning experiences that she is able to follow, understand and complete tasks." Tr. 288. Accordingly, the ALJ properly considered plaintiff's GAF scores in conjunction with the other evidence and testimony in the record.

The Court finds that the ALJ's finding that Ms. Jordan was

not disabled is supported by substantial evidence in the record.

## 2. **Vocational Expert**

Plaintiff's second argument is that the ALJ erred in not having a vocational expert appear and testify. Doc. #10-2 at 8. She contends that, "[t]here are certain times that the Administration mandates that a vocational expert testify;" however, plaintiff fails to make a strong argument as to why this case is one of the aforementioned "certain times." Id.

Here, the ALJ did not rely on vocational testimony. Rather, he applied the GRID rule 204.00 to find that Jordan was not disabled. The defendant correctly argues that vocational testimony is not required in every case involving non-exertional impairments. Doc. #13-2 at 13.

"In the ordinary case, the Commissioner meets his burden at the fifth step by resorting to the applicable medical vocational guidelines (the grids), 20 C.F.R. Pt. 404, Subpt. P, App. 2 (1986)." Rosa v. Callahan, 168 F.3d 72, 78 (2d Cir. 1999) (quoting Bapp v. Bowen, 802 F.2d at 601, 604 (2d Cir. 1986)). The grids "take[ ] into account the claimant's residual functional capacity in conjunction with the claimant's age, education and work experience." Rosa, 168 F.3d at 78 (quoting Zorilla v. Chater, 915 F. Supp. 662, 667 (S.D.N.Y. 1996)). "Based on these

considerations, the grids indicate whether the claimant can engage in any substantial gainful work existing in the national economy." Rosa, 168 F.3d at 78.

Here, the ALJ found that the claimant had the "residual functional capacity to perform a wide range of heavy work; she could follow simple instructions and perform routine repetitive tasks, [when] she is limited to occasional contact with co-workers and the public."  Tr. 19.  He applied GRIDs Rule 204.00 and determined that plaintiff was not disabled.  Plaintiff argues that the ALJ erred by applying the GRID because her non-exertional impairments required the ALJ to first obtain testimony from a vocational expert. [Doc. 10-2 at 8-9].

"The mere existence of a non-exertional impairment does not automatically require the production of a vocational expert nor preclude reliance on the guidelines."  Bapp, 802 F.2d at 603.  It is only "if a claimant's non-exertional impairments 'significantly limit the range of work permitted by this exertional limitation' [that] the grids obviously will not accurately determine disability status. . . . " Id. (quoting Blacknall v. Heckler, 721 F.2d 1179, 1181 (9th Cir. 1983)).  "By the use of the phrase 'significantly diminish' we mean the additional loss of work capacity beyond a negligible one or, in

other words, one that so narrows a claimant's possible range of work as to deprive him of a meaningful employment opportunity." Bapp, 802 F.2d at 605-06.

Plaintiff fails to explain how these non-exertional limitations "significantly diminish" the unskilled employment opportunities contemplated by the GRIDS. Unskilled work is work which needs little or no judgment to do, simple duties that can be learned on the job in a short period of time. 20 C.F.R. 416.968. "The basic mental demands of competitive remunerative unskilled work include the abilities . . . to understand, carry out and remember simple instructions . . . ." Social Security Ruling (SSR) 85-15. SSR 85-15 explains that the occupational base for unskilled work is not eroded unless there is evidence of a substantial loss in the ability to perform these basic work-related activities. Absent this evidence, plaintiff's second assignment of error is without merit.

**3.  Substantial Evidence Supporting Commissioner's Decision**

The defendant contends that the Commissioner's decision is supported by substantial evidence and should be affirmed. The Court agrees.

As discussed above, the ALJ's findings are supported by the evidence of record. As such, his decision that plaintiff is not

disabled is supported by substantial evidence.  Accordingly,

defendant's motion should be granted.


## VI.  CONCLUSION

For the reasons stated above, the undersigned recommends

that plaintiff's Motion for Summary Judgment, or in the

Alternative, Remand **[Doc. #10**] be **DENIED** and defendant's Motion

to Affirm the Decision of the Commissioner [**Doc. #13**] be **GRANTED.**

The parties are free to seek the district judge's review of

this recommendation.  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P.

72; D. Conn. L. Civ. R. 72 for Magistrate Judges;  Small v.

Secretary of HHS, 892 F.2d 15, 16 (2d Cir. 1989) (failure to file

timely objection to Magistrate Judge's recommended ruling may

preclude further appeal to Second Circuit).

Entered at Bridgeport, this 10th day of December 2008.


                            /s/
              _____
                            HOLLY B. FITZSIMMONS
                            UNITED STATES MAGISTRATE JUDGE