UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| MARYELIZABETH BASSETT JORDAN, : | |
|     Plaintiff, : | |
| : | CIVIL ACTION NO. |
| v. : | 3:08-cv-136 (JCH) |
| : | |
| MICHAEL J. ASTRUE, : | |
| COMMISSIONER, : | |
| SOCIAL SECURITY ADMINISTRATION : | FEBRUARY 25, 2009 |
|     Defendant. : | |

**RULING RE: PENDING MOTIONS [Doc. Nos. 10, 13]**

**I.      INTRODUCTION**

Plaintiff, Maryelizabeth Bassett Jordan, brings this action pursuant to 42 U.S.C. § 405(g), requesting reversal of a final decision by defendant, the Commissioner of the Social Security Administration (the "Commissioner"), denying her claim for disabled adult child and Supplemental Security Income ("SSI") benefits.  Plaintiff moves for summary judgment pursuant to Fed. R. Civ. P. 56(b) or, in the alternative, for a remand to the Social Security Administration for further administrative proceedings.  The Commissioner opposes plaintiff's Motion and moves for an order affirming his decision.  On December 10, 2008, Magistrate Judge Holly B. Fitzsimmons issued a Recommended Ruling [Doc. No. 16], recommending that plaintiff's Motion be denied and that the defendant's Motion be granted.  Plaintiff objected [Doc. No. 19]

For the reasons set forth below, the plaintiff's objections to the Recommended Ruling are **SUSTAINED**, and the Recommended Ruling is **REJECTED**.  Accordingly, the plaintiff's Motion [Doc. No. 10] is **GRANTED IN PART**, defendant's Motion [Doc. No. 13] is **DENIED**, and the case is remanded to the Commissioner for further proceedings consistent with this opinion.

## II.     STANDARD OF REVIEW

As a preliminary matter, a district court reviews, de novo, those portions of a magistrate judge's recommended ruling to which an objection is made.  The court may adopt, reject, or modify, in whole or in part, the magistrate judge's recommended ruling. See 28 U.S.C. § 636(b)(1)(c); Fed. R. Civ. P. 72(b)(3).

In review of a Social Security disability determination, a court will set aside the decision of an administrative law judge ("ALJ") "only where it is based upon legal error or is unsupported by substantial evidence." Balsamo v. Chater, 142 F.3d 75, 79 (2d Cir. 1998).  As the Supreme Court has instructed, substantial evidence means more than a "mere scintilla." Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal quotation and citation omitted).  Rather, substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id.  Further, the substantial evidence rule also applies to inferences and conclusions that are drawn from findings of fact.  See Gonzalez v. Apfel, 23 F. Supp. 2d 179, 189 (D. Conn. 1998). In its review, a court may not decide facts, re-weigh evidence, or substitute its judgment for that of the Commissioner.  See Reyes v. Harris, 486 F. Supp. 1063, 1067 (S.D.N.Y. 1980).

Under this standard of review, absent an error of law, a court must uphold the Commissioner's decision if it is supported by substantial evidence, even if the court might have ruled differently. See Eastman v. Barnhart, 241 F. Supp. 2d 160, 168 (D. Conn. 2003).

**III.    BACKGROUND**

      A.    Procedural History

Jordan filed an application for child's insurance benefits and SSI on March 9, 2005, alleging disability beginning June 13, 1989. Certified Transcript of Administrative Proceedings ("Tr.") at 37-9. The claims were denied initially on July 22, 2005, and upon reconsideration on September 3, 2005. Id. at 16. Jordan subsequently requested an administrative hearing, which was held before ALJ Robert A. DiBicarro on February 7, 2007. Id. On August 31, 2007, the ALJ issued a decision in which he found that Jordan was not disabled. Id. at 16-23.

On October 25, 2007, Jordan requested review of the ALJ's decision. Id. at 7-12. On December 28, 2007, the Appeals Council denied Jordan's request, rendering the ALJ's decision the final decision of the Commissioner. Id. at 4-6.

On January 22, 2008, Jordan filed the current action in the District of Connecticut, and on December 11, 2008, Magistrate Judge Fitzsimmons issued the Recommended Ruling. Jordan objected to the Recommended Ruling on January 13, 2009. The court now addresses that objection.

      B.    Summary of Facts

Maryelizabeth Bassett Jordan was born on June 13, 1987, and was twenty years old when the ALJ issued his decision in August 2007. Id. at 37. She has a high school education and worked briefly at Kohl's, Dunkin' Donuts, and Popeyes. Id. at 253, 256-61. She has no past relevant work as defined by the Social Security Administration.[1]

---

[1] Jordan's employment at Kohl's, Dunkin' Donuts, and Popeyes each lasted only a matter of weeks. See Tr. 256-261. Such short-term, part-time employment does not qualify as past relevant work

Jordan claims that her disability began on June 13, 1989, when, at age two, she was diagnosed with Attention Deficit Disorder with Hyperactivity Conduct Disorder ("ADHD") and Oppositional Defiant Disorder ("ODD"). Id. at 88, 270. She first began special education courses in kindergarten, and remained in at least some special education classes through high school. Id. at 63-4, 271. Over the years, Jordan received therapy for ADHD, ODD, and anger management, and has been on a variety of medication including Ritalin, Depakote, Stratera, and Topamaz. Id. at 263, 268. Jordan also suffers from asthma, which led the ALJ to find that she must "avoid concentrated exposure to dust, gases, fumes, and other environmental irritants." Id. at 19, 110.

At the time of the ALJ hearing, Jordan had not been taking medication or attending therapy for approximately two years. Id. at 294. She testified that she spent her days seeking employment, watching television, and going on the Internet. Id. at 265-6.

C. Clinical Assessments

1. Marc Hillbrand, Ph.D.

On June 20, 2005, Dr. Marc Hillbrand, Ph.D., conducted a psychological consultative evaluation of Jordan. Id. at 188-91. He also interviewed Jordan's mother and assessed treatment records from Rushford MidState Behavioral Health Systems from 2002-3 and Meriden Public School District records from 2002. Id. at 188.

---

for the purposes of a disability analysis. See 20 C.F.R. 404.1560(b) ("Past relevant work is work that [the claimant has] done within the past 15 years, that was substantial gainful activity, and that lasted long enough for [the claimant] to learn to do it").

Dr. Hillbrand described Jordan as "alert and oriented in all spheres." Id. at 189. He observed that Jordan "provided good answers to formal judgment questions, although her history is replete with instances of poor judgment." Id. at 189. He also noted that "she is easily distractible" and that, "her memory is on a par with other intellectual functions." Id. Dr. Hillbrand noted that both Jordan and her mother stated that Jordan gets angry easily. Id. at 188.

During the assessment with Dr. Hillbrand, Jordan demonstrated hyperactivity and her affect was "labile and easily irritable." Id. at 189. Her speech was loud and with slight pressure. Id. Based on the Wechsler Adult Intelligence Scale, Third Edition ("WAIS-III"), Jordan's IQ indices fell in the borderline intellectual functioning range, without significant differences among them. Id. Dr. Hillbrand concluded that Jordan's pattern of performance on the various achievement, intellectual, and neuropsychological measures he assessed was "suggestive of lifelong intellectual endowment in the borderline intellectual functioning range with a specific weakness in the ability to manipulate numeric symbols." Id. at 190. He further noted that "there was evidence of poor emotional regulation," that Jordan "views the world as a challenging and hostile place," and that "the pattern of scores [from a lengthy Rorschach protocol] is consistent with character pathology." Id.

Dr. Hillbrand indicated the following diagnoses for Jordan according to the Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition ("DSM-IV"), Axis I: ADHD, conduct disorder, mathematics disorder, marijuana abuse, and depressive disorder not otherwise specified ("NOS"); Axis II: borderline intellectual functioning, personality disorder NOS, mixed, with antisocial and borderline traits; Axis III: asthma;

Axis IV: occupational problems, educational problems, and economic problems; and Axis V: global assessment of functioning ("GAF") score of 60.[2] Id.

2.  Bill Fuess, Ph.D.

Dr. Bill Fuess, Ph. D., testified as an impartial medical expert at Jordan's February 7, 2007 administrative hearing. Id. at 280-93. After reviewing Jordan's records and listening to her testimony, Dr. Fuess summarized Jordan's mental impairments as ADHD, ODD, depression, personality disorder, and marijuana abuse. Id. at 281-3. Dr. Fuess opined that Jordan suffered from no limitations to mild limitations related to her activities of daily living, id. at 285-6; moderate limitations related to social functioning, id. at 286; moderate limitations related to concentration, persistence, and pace, id. at 286-7; and no periods of extended deterioration or decompensation, id. at 288.

The ALJ asked Dr. Fuess whether Jordan could perform simple, routine, repetitive tasks on a regular and continuing basis. Dr. Fuess replied that Jordan could perform such tasks, albeit with minimal contact with the public and with fellow workers. Id. at 288. Dr. Fuess also acknowledged that it would be fair to say that an individual with a GAF score in the thirties or forties[3] would be unable to maintain a regular job, even one that was simple, repetitive, and routine, but cautioned that the GAF score was

---

[2] A GAF score of 60 indicates "moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)" (emphasis in original). Tr. 11.

[3] From 2002 to 2006, Jordan was ascribed GAF scores ranging from 39 to 60. Of the five scores that appear in the record, one was in the thirties (39), three were in the forties (41-45, 46, 48) and one was 60. Tr. 81, 90, 96, 191, 234, 292.

"a snapshot" and "subjective." Id. at 291-2. He concluded that Jordan's past GAF scores below 60 did not fairly describe her overall impairment. Id. at 289.

3. Jay M. Curdin, Ph.D.

At the hearing, the ALJ noted that it had been two years since Jordan's last examination and treatment. Id. at 294. Accordingly, the ALJ sent Jordan for a follow-up examination to obtain current information. Id. at 294. On May 7, 2007, Dr. Jay M. Curdin, Ph.D., conducted a psychological consultative evaluation of Jordan. Id. at 238-240.

Dr. Curdin concluded that Jordan was "a temperamental late adolescent who needed little pretext for her anger." Id. at 240. He noted that Jordan "denied most emotional problems but was upset with herself over not being able to absorb new job routines," and that her performance during testing "showed that ongoing problems with attention and concentration interfered with her ability to show her full intelligence potential." Id. He concluded that Jordan's "overall results showed that she could understand and retain instructions but had problems with consistent attention and concentration that would affect learning and consistently handling job demands." Id. He found her to be in the borderline intelligence range. Id.

Dr. Curdin also completed a medical source statement of ability to do work-related activities (mental) for Jordan. Id. at 241-3. In the statement, he opined that Jordan had no limitation in her abilities to understand, remember, and carry out simple instructions, and no limitation in her abilities to make judgments on simple work-related decisions. Id. at 241. Dr. Curdin opined that Jordan suffered from mild limitations in her abilities to understand and remember complex instructions, to interact appropriately

with co-workers, and to respond appropriately to usual work situations and to changes in a routine work setting.  Id. at 241-2.  He noted that Jordan had moderate limitations in her ability to carry out complex instructions, to make judgments on complex work-related decisions, and to interact appropriately with the public and with supervisors.  Id.  He stated that poor attention, concentration, and computational skills affected her impairment.  Id. at 242.

### D.   ALJ's Disability Determination

Jordan claims that she is entitled to disabled adult child benefits and SSI due to disability as provided for in Title II of the Social Security Act ("the Act").  See 42 U.S.C. § 402(d)(1).  Under Section 402(d)(1), "every child . . . of an individual entitled to old-age or disability benefits" is entitled to benefits, if the child: "(A) has filed an application for child's insurance benefits; (B) at the time such application was filed was unmarried and . . . is under a disability . . . which began before [she] attained the age of 22, and; (C) was dependent on such individual . . . at the time of such death."[4]

A claimant is considered disabled under the Act if the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The impairment or impairments must be of such severity that the claimant:

> is not only unable to do his previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which [she] lives, or whether a

---

[4] Jordan's father died of cancer in September 1997, when Jordan was ten years old.  Tr. 92, 269.

>specific job vacancy exists for [her], or whether [she] would be hired if [she] applied for work.

Id. at § 423(d)(2)(A).

Under the Act, the Social Security Administration (the "Administration") has established a five-step, sequential evaluation process for determining whether an individual is disabled. See 20 C.F.R. § 416.920(a). The steps are followed in order. If at any step it is determined that the claimant is or is not disabled, the evaluation ends without proceeding to the next step.

At step one, the Commissioner must determine whether the claimant is engaged in substantial gainful activity. See 20 C.F.R. § 416.920(b). Generally, if an individual has earnings from employment or self-employment above a level set out in the regulations, it is presumed that that individual has demonstrated the ability to engage in substantial gainful activity. See 20 C.F.R. §§ 416.974-5. If the claimant is not engaged in substantial gainful activity, the evaluation proceeds to step two.

At step two, the Commissioner must determine whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments that is "severe." See 20 C.F.R. § 416.920(c). An impairment or combination of impairments is "severe" within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities. If the claimant has an impairment or combination of impairments that is "severe," the evaluation proceeds to step three.

At step three, the Commissioner must determine whether the claimant's impairment or combination of impairments meets or medically equals the criteria of an impairment listed in the appendix to the regulations. See 20 C.F.R §§ 416.920(d),

416.925-6.  If the claimant's impairment or combination of impairments meets or medically equals the criteria of a listing, and meets a duration requirement, the claimant is disabled.  If not, the evaluation proceeds to step four.

At step four, the Commissioner must determine the claimant's residual functioning capacity ("RFC") and then determine whether the claimant has the RFC to perform the requirements of the claimant's past relevant work.  See 20 C.F.R. §§ 416.920(e), 416.920(f).  If the claimant has the RFC to perform past relevant work, the claimant is not disabled.  If the claimant is unable to perform any past relevant work, the evaluation proceeds to the fifth and last step.

At step five, the Commissioner must determine whether the claimant is able to perform any other work, taking into consideration the claimant's RFC, age, education, and work experience.  See 20 C.F.R. § 416.920(g).  If the claimant is not able to perform other work and meets the duration requirement, the claimant is disabled.

The burden of establishing a disability is on the claimant.  Once the claimant meets the burden for the first four steps of the disability evaluation, however, the burden then shifts to the Commissioner for the fifth step.  See Balsamo, 142 F.3d at 80.

In the present case, in his August 31, 2007 decision, the ALJ found that Jordan satisfied the first two steps of the disability evaluation.  Tr. 18.  At the third step, the ALJ then found that Jordan's impairments do not meet or equal the severity of any impairment listed in the appendix to the regulations.  Id. at 19.  At step four, the ALJ determined that Jordan has no past relevant work.  Id. at 22.  Finally, at step five, the ALJ found that Jordan had the residual functional capacity "to perform in a wide range of heavy work."  Id. at 19.  Consequently, the ALJ concluded that Jordan has not been

under a disability since June 13, 1989. Id. at 23.

## IV. ANALYSIS

Jordan now objects to the Recommended Ruling on the grounds that the Magistrate Judge improperly rejected Jordan's argument that the ALJ erred in failing to have a vocation expert ("VE") appear and testify at the administrative hearing. Jordan first advanced her argument concerning the necessity of VE testimony in her original Motion for Summary Judgment [Doc. No. 10]. Specifically, Jordan argued that there are "certain times that the Administration mandates that a vocational expert testify [rather than allowing an ALJ to rely solely on the Medical-Vocational Guidelines ("the grids")]," including, e.g., "cases where claimants have significant non-exertional impairments." Plaintiff's Memorandum in Support of Motion for Summary Judgment ("Mem. in Supp.") at 8-9.

The Magistrate Judge rejected this argument, noting that, "'The mere existence of a non-exertional impairment does not automatically require the production of a vocational expert nor preclude reliance on the guidelines.' Bapp, 802 F.2d at 603," and further holding that Jordan failed to explain how her non-exertional limitations significantly diminished the employment opportunities contemplated by the grids. See Recommended Ruling at 23. The court disagrees.

"In the ordinary case, the Commissioner meets his burden at the fifth step [of the disability determination analysis] by resorting to the applicable medical vocational guidelines (the grids), 20 C.F.R. Pt. 404, Subpt. P, App. 2 (1986)." Rosa v. Callahan, 168 F.3d 72, 78 (2d Cir. 1999) (quoting Bapp v. Bowen, 802 F.2d 601, 604 (2d Cir. 1986)). The grids "take[ ] into account the claimant's residual functional capacity in

conjunction with the claimant's age, education, and work experience." Rosa, 168 F.3d at 78 (quoting Zorilla v. Chater, 915 F. Supp. 662, 667 (S.D.N.Y. 1996)). "Based on these considerations, the grids indicate whether the claimant can engage in any substantial gainful work existing in the national economy." Rosa, 168 F.3d at 78.

In determining that Jordan was capable of performing "unskilled work at all exertional levels," Tr. 23, the ALJ relied on Rule 204.00 of the grids. Rule 204.00 essentially requires a finding of "not disabled" for individuals who remain capable of heavy or very heavy work. See 20 C.F.R. Pt. 404, Subpt. P, App. 2, Sec. 204.00.

As Jordan points out, however, Rule 200.00(e)(1) specifically states that, "[t]he rules do not direct factual conclusions of disabled or not disabled for individuals with solely non-exertional types of impairments." 20 C.F.R. Pt. 404, Subpt. P, App. 2, Sec. 200.00(e)(1). The Second Circuit has recognized the limitations of the grids as well, holding that "[w]here significant non-exertional impairments are present at the fifth step in the disability analysis . . . 'application of the grids is inappropriate.'" Rosa, 168 F.3d at 82 (quoting Bapp v. Bowen, 802 F.2d 601, 605-06 (2d Cir. 1986)). Rather, in such circumstances the Commissioner "must introduce the testimony of a vocational expert (or other similar evidence) that jobs exist in the economy which claimant can obtain and perform." Bapp, 802 F.2d at 603.

In Bapp, the Second Circuit held that the necessity of VE testimony must be determined on a "case-by-case basis." Id. at 605. "If the guidelines adequately reflect a claimant's condition, then their use to determine disability status is appropriate." Id. If, on the other hand, a claimant's non-exertional impairments "significantly limit the range of work permitted by [her] exertional limitations" then the grids obviously will not

accurately determine disability status . . . ." Id. Thus, this court must determine whether Jordan's non-exertional impairments significantly limit the range of work permitted by her exertional limitations.

To begin, it is important to note that Jordan's impairments are non-exertional. See Social Security Rulings ("SSR") 83-10, 1983 SSR LEXIS 30.[5] It has not been shown that she has any exertional limitations whatsoever.[6] See id. In fact, based on her exertional limitations alone, Jordan is not precluded from any meaningful employment opportunity in the national economy. Such classification, however, does not describe Jordan's situation accurately. She has tested in the bottom one-tenth of one percent of the general population in math calculation skills. Tr. 63. Three clinical psychologists have noted that she has a diminished capacity to learn, two of whom have concluded that she has borderline intellectual functioning. Id. at 190, 240, 283. The psychologists have also stated serious reservations about her ability to function socially, including specific notations that she is limited in her ability to interact appropriately with co-workers, supervisors, and the public. Id. at 190, 241-2, 286, 288.

While these impairments may not preclude Jordan from engaging in substantial gainful activity, they significantly limit the range of work permitted by her full exertional capabilities. Consequently, it is the opinion of this court that the ALJ committed an

---

[5] A non-exertional impairment is "[a]ny impairment which does not directly affect the ability to sit, stand, walk, lift, carry, push, or pull. This includes impairments which affect the mind, vision, hearing, speech, and use of the body to climb, balance, stoop, kneel, crouch, crawl, reach, handle, and use of the fingers for fine activities." SSR 83-10, 1983 SSR LEXIS 30.

[6] An exertional limitation is defined as an "impairment-caused limitation which affects capability to perform an exertional activity." SSR 83-10, 1983 SSR LEXIS 30. An exertional activity is "one of the primary strength activities (sitting, standing, walking, lifting, carrying, pushing, and pulling) defining a level of work." Id.

error of law in relying solely on the grids in the fifth step of the disability determination. That is, given Jordan's significant non-exertional impairments, the court finds that the range of work she can perform is so significantly diminished as to require the introduction of vocational testimony.  See Bapp v. Bowen, 802 F.2d 601, 606 (2d Cir. 1986).  As a result, the ALJ should require the Commissioner to present either the testimony of a vocational expert or other similar evidence regarding the existence of jobs in the national economy for an individual with Jordan's limitations.

## V.    CONCLUSION

For the reasons discussed herein, and based on a review of the Magistrate Judge's Recommended Ruling [Doc. No. 16], that ruling is **REJECTED**.  Plaintiff's Motion [Doc. No. 10] is **GRANTED IN PART**, and defendant's Motion to Affirm the Decision of the Commissioner [Doc. No. 13] is **DENIED**.  This case is remanded to the Commissioner for further proceedings consistent with this opinion.

**SO ORDERED**.

Dated this 25th day of February, 2009, at Bridgeport, Connecticut.


 /s/ Janet C. Hall
Janet C. Hall
United States District Judge